United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MELINDA MAYHEW,

Plaintiff,

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY; FORMFACTOR, INC. GROUP WELFARE BENEFIT PLAN,

Defendants.

Case No. 11-2908 SC

ORDER DENYING MAYHEW'S MOTION TO DISMISS COUNTERCLAIM

## I. INTRODUCTION

Plaintiff Melinda Mayhew ("Mayhew") commenced this action for declaratory, injunctive, and monetary relief pursuant to § 502(a)(1) of the Employee Retirement Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1), against Defendants Hartford Life and Accident Insurance Company ("Hartford") and Formfactor, Inc. Group Welfare Benefit Plan (collectively, "Defendants"). ECF No. 1 ("Compl.") ¶ 1. In answering the Complaint, Hartford asserted a Counterclaim for restitution. ECF No. 16 ("Counterclaim") ¶¶ 67-72. Now before the Court is Mayhew's Motion to Dismiss the Counterclaim, which is fully briefed. ECF Nos. 18 ("Mot."), 22 ("Opp'n"), 23 ("Reply"). For the reasons set forth below, Mayhew's Motion is DENIED.

United States District Court
For the Northern District of California

## II. BACKGROUND

As it must on a motion to dismiss Hartford's Counterclaim pursuant to Rule 12(b)(6), the Court assumes the veracity of Hartford's well-pleaded factual allegations. Mayhew alleges that Formfactor, Inc. ("Formfactor") employed her as a technical writer between January 15, 2001 and December 15, 2006. Compl. ¶ 9. At all relevant times, Mayhew was a participant in Formfactor's Group Welfare Benefit Plan ("the Plan"), which was funded by Hartford through a group insurance policy. Id. ¶¶ 4-5. Mayhew alleges that she has been diagnosed with Graves Disease, an autoimmune disorder that leads to overactivity of the thyroid gland. Id. ¶ 10. Mayhew further alleges that her condition significantly worsened in November 2006 and, as a result, she ceased working altogether on December 15, 2006. Id. ¶¶ 10, 16. Hartford alleges that it commenced paying Mayhew monthly benefits under the Plan in March 2007. Counterclaim ¶ 68. In June 2010, Hartford terminated Mayhew's Long Term Disability ("LTD") and Waiver of Premium claim. Id. ¶ 30; Compl. ¶ 30.

In addition to receiving benefits under the Plan, Hartford alleges that Mayhew was also awarded lump sum Social Security Disability ("SSDI") benefit in the amount of $65,342.50 and Dependent Social Security Disability ("DSSD")[1] benefits in the amount of $910,000. Counterclaim ¶¶ 61, 65. Hartford learned of the SSDI and DSSD payments after it had terminated Mayhew's claims. Id. Hartford alleges that, due to the SSDI and DSSD awards,

[1] While it is not pled in the Complaint or Counterclaim, the parties' papers indicate that Mayhew's child qualified for the DSSD benefits.

Mayhew's claim under the Plan was overpaid by $79,393.51 and that Mayhew has yet to reimburse Hartford for the overpayments. Id. ¶ 65. Hartford further alleges that in a September 30, 2010 letter to Hartford, Mayhew stated, "I am willing to pay Hartford all that I owe [with respect to the SSDI benefits] but I am requesting an extension to pay the overpayment." Id. ¶ 63.

Mayhew filed this action on June 13, 2011, alleging that Defendants violated ERISA by terminating her claim for LTD and her Life Insurance Waiver of Premium benefit under the Plan. Compl. ¶¶ 40, 43. Hartford filed the Counterclaim on August 8, 2011, seeking restitution of the alleged LTD overpayments resulting from Mayhew's receipt of SSDI and DSSD benefits. Counterclaim at ¶¶ 19-20.

Mayhew now moves to dismiss Hartford's Counterclaim on the grounds that: (1) it is preempted and otherwise prohibited by ERISA, and (2) the Plan does not permit offsets for DSSD benefits.

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). However, "the tenet that a

United States District Court
For the Northern District of California

court must accept as true all of the allegations contained in a [claim] is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The allegations made in a complaint or counterclaim must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011).

## IV. DISCUSSION

### A. ERISA § 502(a)(3)

Under § 502(a)(3) of ERISA, a fiduciary may bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). This provision authorizes only "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993).

Mayhew contends that, in spite of its label, Hartford's Counterclaim for restitution constitutes a claim for legal or money damages, which is barred by ERISA. Mot. at 5. Hartford responds

that the Counterclaim is equitable in nature and thus permissible. Opp'n at 6-7. The parties' dispute turns on the Supreme Court's decisions in Great-West Life & Annuity Insurance Company v. Knudson, 534 U.S. 204 (2002) and Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356 (2006).

Knudson dealt with the reimbursement provision of an insurance plan that gave the insurer, Great-West, the "right to recover from the [beneficiary] any payment for benefits" paid by Great-West which was later recovered from a third party. 534 U.S. at 207. After Great-West paid a portion of the Knudsons' medical expenses resulting from a car accident, the Knudsons entered into a settlement agreement with a car manufacturer which established a special needs trust to provide for the Knudsons' medical care. Id. at 207-08. The Supreme Court rejected Great-West's § 502(a)(3) reimbursement claim because the settlement funds sought were in a special needs trust rather than the Knudsons' possession. Id. at 214. The Court concluded that Great-West was not seeking equitable relief but "the imposition of personal liability for the benefits that they conferred upon [the Knudsons]." Id. at 214.

In Sereboff, the Supreme Court allowed an insurer's claim for reimbursement under similar facts. The Sereboffs were injured in a car accident, received insurance benefits for medical expenses incurred, and later settled against third parties involved in the accident. Sereboff, 547 U.S. at 360. Pursuant to § 502(a)(3), the insurer, Mid Atlantic, sought to enforce a plan provision which required "a beneficiary who receives benefits under the plan . . . to reimburse [Mid Atlantic] for those benefits from [a]ll

recoveries from a third party." Id. at 359 (internal quotation marks omitted). The Supreme Court distinguished Sereboff from Knudson on the grounds that the Sereboffs' settlement funds were not held by a trust and, as such, Mid Atlantic was seeking particular funds in the Sereboffs' possession, not the imposition of personal liability. Id. at 362-63. The Court concluded that Mid Atlantic's claim was permissible under ERISA. Id. at 369.

The Supreme Court found that the reimbursement provision in the Sereboffs' insurance plan gave rise to an equitable lien by agreement. Id. at 363-365. The Court explained:

> [T]he Sereboffs' plan specifically identified a particular fund, distinct from the Sereboffs' general assets--"[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)"--and a particular share of that fund to which Mid Atlantic was entitled--"that portion of the total recovery which is due [Mid Atlantic] for benefits paid."

Id. at 364. Under "a familiar rule of equity," the insurer could "follow[] a portion of the recovery 'into the [Sereboffs'] hands' 'as soon as [the settlement fund] was identified,' and impos[e] on that portion a constructive trust or equitable lien." Id. (quoting Barnes v. Alexander, 232 U.S. 117, 123 (1914)). The Supreme Court noted that "the fund over which a lien is asserted need not be in existence when the contract containing the lien provision is executed." Id. at 366. Further, no "strict tracing rules" apply to an equitable lien by agreement. Id. at 365. Accordingly, the property to which the lien attached could be converted to other property without destroying the lien. See id. at 364-65.

Mayhew argues that Hartford's counterclaim is barred under Knudson since Hartford "seeks to impose personal liability on [Mayhew] for her alleged breach of the plan." Mot. at 8. Hartford responds that it seeks permissible equitable relief under Sereboff because the Plan created an equitable lien by agreement. Opp'n at 6.

The Court agrees with Hartford. The Plan created an equitable lien as it "specifically identified a particular fund, distinct from [Mayhew's] general assets. . . and a particular share of that fund to which [Hartford] was entitled." Seberoff, 547 U.S. at 364. The particular fund is identified by the Plan as the "benefit for loss of income, provided to you or to your family, as a result of the Period of Disability . . . includ[ing] . . . disability benefits under the United States Social Security Act." Roberts Decl.[2] Ex. 1 ("Plan") at 30. The particular share of that fund is identified as "any amount that is an overpayment of benefits under this plan." Id. at 28.

Mayhew argues that the Plan, unlike the reimbursement provision in Sereboff, did not purport to create a lien of any kind. Reply at 3. The Court finds that the following language from the Plan is sufficient to create an equitable lien: "We have the right to recover from you any amount that is an overpayment of benefits under this plan. You must refund to us the overpaid amount."[3] Plan at 28.

---

[2] Michelle L. Roberts ("Roberts"), Mayhew's attorney, submitted a declaration in support of the Motion. ECF No. 19 ("Roberts Decl.").

[3] The First and Third Circuits as well as district courts in the Ninth Circuit have found similar provisions sufficient to create an

The Court also rejects Mayhew's contention that Hartford must identify a fund containing the overpayments that is directly traceable to Mayhew's custody, control, or possession. See Reply at 9. In Sereboff, the Supreme Court found that the Sereboffs' possession of the settlement funds was sufficient to distinguish the case from Knudson, where the settlement funds at issue had been held in a special needs trust. Specifically the Supreme Court stated:

> The impediment to characterizing relief in Knudson as equitable is not present here. . . . [I]n this case Mid Atlantic sought specifically identifiable funds that were within the possession and control of the Sereboffs--that portion of the tort settlement due Mid Atlantic under the terms of the ERISA plan, set aside and preserved [in the Sereboffs'] investment accounts.

547 U.S. at 362-63. However, the Supreme Court ultimately rejected the Sereboffs' contention that Mid Atlantic was required to trace its property to a particular fund or asset held by the Sereboffs to state a claim for equitable relief. Id. at 365. The Court noted "the familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a

---

equitable claim for Social Security benefits enforceable under § 502(a)(3). See Funk v. CIGNA Group Ins., 648 F.3d 182, 193-195 (3rd Cir. 2011) (permitting counterclaim for overpaid LTD benefits where the plan provided that a Social Security offset "shall be . . . . payable . . . by the recipient"); Cusson v. Liberty Life Assurance Co. of Boston, 592 F.3d 215, 230-31 (1st Cir. 2010) (counterclaim for LTD benefits constituted an equitable claim allowable under § 502(a)(3)); Pollok v. Northrop Grumman Health Plan, CV09-7006 JST, 2011 U.S. Dist. LEXIS 41716, at *7, 13-14 (N.D. Cal. Apr. 12, 2011) (permitting counterclaim for overpaid LTD benefits where plan provided "the payments you receive under the . . . LTD plans are offset dollar for dollar by other disability income benefits that you receive"); DeBenedictis v. Hartford Life & Accident Ins. Co., 701 F. Supp. 2d 1113, 1134 (D. Ariz. 2010) (Defendant entitled to recover overpaid LTD benefits, even though benefits were not specifically traceable).

United States District Court
For the Northern District of California

trustee as soon as he gets a title to the thing." Id. at 363-64 (quotation marks and citations omitted). Unlike in Knudson, in the instant action, there is no indication that Mayhew's benefits were distributed to a trust outside of her possession. Further, as Hartford's equitable lien attached when Mayhew came into possession of the overpayments, Hartford may state a claim under § 503(a)(3) without directly tracing the overpayments to particular property within Mayhew's possession.

Mayhew points to two Ninth Circuit decisions where the court found that ERISA claims for restitution were not equitable and were thus barred under § 502(a)(3): Honolulu Joint Apprenticeship & Training Committee of United Association Local Union No. 675 v. Foster, 332 F.3d 1234 (9th Cir. 2003), and Carpenters Health and Welfare Trust for Southern California v. Vonderharr, 384 F.3d 667 (9th Cir. 2004). However, these cases pre-date the Supreme Court's decision in Sereboff, which clarified the types of equitable claims available under ERISA.[4] See Mairena v. Enter. Rent-A-Car Hosp. Ins. Plan, C 09-4420 MEJ, 2010 U.S. Dist. LEXIS 110292, at *25 (N.D. Cal. Sep. 30, 2010).[5]

Mayhew argues that, even if the Counterclaim states a claim for equitable relief, the Social Security Act expressly prohibits

[4] Additionally, Foster is distinguishable since, in that case, "no funds were actually transferred to [defendant] -- [plaintiff] merely seeks reimbursement for the costs it incurred for his training." 332 F.3d at 1238.

[5] Plaintiff also relies on Martorello v. Sun Life Company of Canada, C 09-0912 PJH, 2009 U.S. Dist. LEXIS 41465 (N.D. Cal. May 1, 2009), where the district court dismissed an insurance company's counterclaim for restitution of overpaid disability benefits on the grounds that the insurance company's claim was not equitable. However, that case did not cite to or address Sereboff.

United States District Court
For the Northern District of California

the attachment of Social Security benefits. Reply at 4. The Social Security Act states:

> The right of any person to any future payment under this title shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a). The Court finds that § 407(a) does not bar the Counterclaim because Hartford "is not attempting to recover [Mayhew's] SSDI benefits. Rather, [Hartford] seeks to recover in equity from funds [Hartford] itself already paid under the LTD plan." Cusson, 592 F.3d at 232. The authority cited by Mayhew is in accord. See Epolito v. Prudential Ins. Co. of Am., 737 F. Supp. 2d 1364, 1383 n.9 (M.D. Fla. 2010) ("[T]he Court recognizes that 42 U.S.C. § 407(a) is not applicable to this matter insofar as Prudential seeks to impose the equitable lien, not on the SSD[I] benefits, but on the overpaid long term disability benefits.").[6]

For these reasons, the Court finds that Hartford's Counterclaim for restitution is an equitable claim and permissible

---

[6] The Court also rejects Mayhew's argument that the Plan's reimbursement provision cannot be applied in good conscience because Hartford terminated Mayhew's claim. Mot. at 8-9. Mayhew reasons that Hartford "effectively recoup[ed]" any moneys owed by withholding benefits, despite a finding of disability by the Social Security Administration. Id. at 9. She argues that she should not "pay Hartford money for a decision it refused to accept." Id. Mayhew offers no authority in support. In any event, the Court is not currently in a position to determine whether Hartford had an adequate basis for terminating Mayhew's claim.

United States District Court
For the Northern District of California

under § 502(a)(3) of ERISA.[7] Hartford may seek to impose an equitable lien on Mayhew's overpaid LTD benefits.

**B. Offset for DSSD Benefits**

The parties also dispute whether Hartford may offset the DSSD benefits for Mayhew's child against Mayhew's LTD benefits. The Plan allows Hartford to offset "Other Income Benefits," which are defined as:

> [T]he amount of any benefit for loss of income, provided to you or to your family, as a result of the period of Disability for which you are claiming benefits under this plan. This includes any such benefits for which you or your family are eligible or that are paid to you, or to a third party on your behalf, pursuant to any: . . .
>
> 5. disability benefits under the United States Social Security Act . . . or similar plan or act that, your spouse and children are eligible to receive because of your Disability.

Plan at 30.

Mayhew contends that offsetting DSSD benefits is inappropriate because they constitute support payments, not benefits for "loss of income." Mot. at 10. Hartford responds that DSSD benefits are intended to replace income lost due to a wage earner's inability to work. Opp'n. at 18. Hartford also argues that the Plan expressly requires DSSD offsets because "Other Income Benefits" include payments provided to family members, including Social Security benefits paid to children. Opp'n at 14-15.

The Court finds that the express terms of the Plan support offsetting the DSSD benefits. "[A] court must give effect to every

[7] As Hartford can state a claim for restitution under ERISA, the Court need not determine whether it has a valid claim under state law.

United States District Court
For the Northern District of California

word or term employed by the parties and reject none as meaningless or surplusage in arriving at the intention of the contracting parties." Cree v. Waterbury, 78 F.3d 1400, 1405 (9th Cir. 1996) (quoting United States v. Hathaway, 242 F.2d 897, 900 (9th Cir. 1957)). The plan provides for the offset of "any benefit for loss of income, provided to you or to your family," including "disability benefits under the Social Security Act . . . your spouse and children are eligible to receive." Plan at 30. To hold that Mayhew's DSSD benefits do not constitute a benefit for loss of income would render this language entirely superfluous.

Neither party cites, nor is the Court aware of, a Ninth Circuit decision directly on point. Mayhew relies on cases holding that plan offset provisions did not apply to DSSD benefits. Mot. at 10-16 (citing In re Unisys Corp. Long-Term Disability Plan ERISA Litig., 97 F.3d 710 (3rd Cir. 1996); Carstens v. U.S. Shoe Corp. Long-Term Benefits Disability Plan, 520 F. Supp. 2d 1165 (N.D. Cal. 2007); Meeks v. Mutual of Omaha Ins. Co., 70 Ill. App. 3d 800 (Ill. App. Ct. 1979)). None of these cases are controlling.

Unisys is distinguishable since the plan provision at issue in that case stated that offsets would only apply to benefits received by the claimant.[8] 97 F.3d at 712. Similarly, in Meeks, the plan provided that the offsets would apply to benefits received "(1) by the protected person or (2) by any other person on his behalf." 70 Ill. App. 3d at 802. The court concluded that checks made payable

---

[8] Specifically, the plan provided that "The LTD you receive may be adjusted if you receive pension benefits from Unisys and/or disability income from other sources, such as Social Security." Carstens, 97 F.3d at712 (emphasis in the original).

**United States District Court**
For the Northern District of California

to the insured on the dependent's behalf did not constitute payments to a protected person. Id. In contrast, in the instant action, the Plan's offset provision expressly applies to benefits paid to Mayhew, her spouse, or her children.

Carstens involved a plan providing offsets for "[p]eriodic benefits, for loss of time . . . by reason of . . . the United States Social Security Act . . . , exclusive of benefits paid . . . . to a child of the Employee." 520 F. Supp. 2d at 1166-67. The court reasoned that loss of time referred to the loss of income resulting from disability. Id. at 1167. Citing Unysis and Meeks, the court found that DSSD benefits constituted support payments rather than payments for income replacement under the plan. Id. at 1168. A number of courts have reached a contrary conclusion, holding that similar offset provisions applied to DSSD payments.[9] In light of the weight of authority and the express terms of the Plan, the Court respectfully disagrees with the holding in Carstens to the extent that it is inconsistent with the Court's order in the instant action.

Further, the Court rejects Mayhew's contention that the Plan's offset provision does not apply to DSSD benefits because, under the Social Security Act, DSSD benefits belong to the dependent as opposed to the disabled adult. Mot. at 11-13. Mayhew points to

---

[9] See Schultz v. Aviall, Inc., 09 C 2387, 2011 U.S. Dist. LEXIS 37125, at *11-12 (N.D. Ill. Apr. 4, 2011); Potop v. Aetna Life Ins. Co., CV 09-02949 DMG, 2010 U.S. Dist. LEXIS 141667, at *4, 12 (C.D. Cal. Sep. 30, 2010); Pennell v. Hartford Life & Accident Ins. Co., 09 CV 485, 2010 U.S. Dist. LEXIS 4695, at *13-21 (N.D. Ohio Jan. 20, 2010); Fortune v. Group Long Term Disability Plan, 637 F. Supp. 2d 132, 145-46 (E.D.N.Y. 2009), aff'd 391 Fed. Appx. 74, 79-80 (2d Cir. 2010); Spinella v. Unum Life Ins. Co., 94-411-JD, 1995 U.S. Dist. LEXIS 11156, at *10-11 (D.N.H. July 14, 1995).

sections of the Social Security Act that provide: a dependent may continue to receive DSSD benefits after her disabled parent dies, a dependent must apply for DSSD benefits, and a dependent is responsible for paying taxes on DSSD benefits. Id. (citing 42 U.S.C. § 402(d)). Mayhew also points to regulations requiring adults to use DSSD payments for the benefit of the dependent. Id. at 14-15. This argument fails for at least two reasons. First, and most importantly, these provisions have no bearing on the terms of the Plan, which expressly provide that Hartford may offset Social Security benefits received by Mayhew's children. Indeed, Mayhew cites no statute or other authority which would prohibit Hartford from offsetting her child's DSSD payments. Second, regardless of who the benefits belong to, the purpose of the benefits is to replace income lost due to the disabled parent's inability to work.[10]

Finally, Mayhew argues that, because she must use the DSSD benefits to pay for her child's specific needs, a DSSD offset would result in her receiving a total income of less than 66 2/3 percent of her pre-disability earnings. Mot. at 16-17. Mayhew reasons that allowing such an offset would be contrary to the terms of the Plan, which provide that she is entitled to receive 66 2/3 percent of monthly income loss. Id. This argument is unpersuasive. The Plan contemplates offsets for other disability benefits, including

---

[10] See Califano v. Goldfarb, 430 U.S. 199, 213-14 (1977) (the Social Security Act's Old-Age, Survivors, and Disability Insurance scheme "is intended to insure covered wage earners and their families against the economic and social impact on the family normally entailed by loss of the wage earner's income"); Fortune, 391 Fed. Appx. at 80 ("the purpose of social security disability benefits is to replace income lost due to the wage earner's inability to work").

United States District Court
For the Northern District of California

disability benefits for which Mayhew's spouse or child are eligible. Yet Mayhew can point to no language in the Plan which would reduce the amount offset for these particular disability benefits. Mayhew is effectively asking the Court to read new terms into the Plan which were not agreed to by the parties. The Court declines to do so.

For these reasons, the Court finds that the Plan permits offsets for DSSD benefits.

## V. **CONCLUSION**

The Court DENIES Plaintiff Melinda Mayhew's Motion to Dismiss Hartford Life and Accident Insurance Company's Counterclaim.

IT IS SO ORDERED.

Dated: October 21, 2011

UNITED STATES DISTRICT JUDGE